**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

AHMAD ISSA,

      Plaintiff,

v.

PROVIDENT FUNDING GROUP, INC. and
GMAC MORTGAGE, LLC,

      Defendants.
_____/

Case No. 09-12595

Hon. Gerald E. Rosen

**OPINION AND**
**ORDER AWARDING SANCTIONS**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on    August 17, 2010

PRESENT: Honorable Gerald E. Rosen
                 Chief Judge, United States District Court

By opinion and order dated February 10, 2010, the Court granted Defendants' motions to dismiss, and further held that sanctions would be imposed upon Plaintiff's counsel under 28 U.S.C. § 1927, limited to the attorney fees and costs reasonably incurred by Defendants in defending this action. Defendants have since submitted statements of the attorney fees and costs they have incurred in this suit, and the law firm that represented Plaintiff (Landis & Day, PLC) and the individual attorney at this firm who served as Plaintiff's counsel during this litigation (Kassem Dakhlallah)[1] have filed

---

[1] As discussed below, Mr. Dakhlallah is no longer at the Landis & Day firm.

responses to these statements. Having reviewed these submissions and the record as a whole, the Court now is prepared to rule on an appropriate award of sanctions. This order sets forth the Court's ruling on this matter.

In its submission to the Court, Defendant Provident Funding Group states that it has incurred $4,294.00 in attorney fees and $35.04 in costs in defending this action. This amount of attorney fees, in turn, reflects 22.6 hours of counsel's time at a billing rate of $190 per hour. In response, Plaintiff's counsel suggests that this number of hours is excessive, where Provident's counsel "specialize[s] in mortgage litigation, defending against cases and claims typical of the type Plaintiff brought against Defendant." (Plaintiff's Counsel's Response at ¶¶ 19-20.) Upon reviewing the records submitted by Provident's counsel, however, the Court is satisfied that the efforts and amounts of time disclosed in these records are reasonable, particularly where counsel was called upon to fully brief a comprehensive dispositive motion, addressing each count of Plaintiff's seven-count complaint, in order to secure the dismissal of the claims asserted against his client.

Next, Defendant GMAC Mortgage has submitted a statement disclosing $3,430.80 in attorney fees and $350.00 in costs incurred in defending this action. This submission reflects 16.4 hours of counsel's time, spread between two attorneys with billing rates of $252 and $198 per hour. In challenging this statement of fees, Plaintiff's counsel argues that it improperly includes work performed prior to the removal of this case to this Court and after GMAC's motion to dismiss was taken under advisement. In Plaintiff's

counsel's view, the sanctionable conduct identified in the Court's February 10 opinion and order was limited to the preparation of responses to Defendants' dispositive motions that failed to acknowledge or distinguish the adverse rulings in other, substantially similar cases brought by Plaintiff's counsel in this District.

Yet, while this was the principal example of sanctionable conduct identified in the February 10 opinion, the Court does not agree that this was the sole instance of conduct that unreasonably and vexatiously multiplied the proceedings in this case. Rather, the February 10 opinion quotes with approval the decision in *Jaafar v. Homefield Financial, Inc.,* No. 09-12832, 2009 WL 3602091, at *3 (E.D. Mich. Oct. 27, 2009), in which Judge Duggan noted the proliferation of essentially identical cases filed by Plaintiff's counsel in this District in a very short period, and stated his view that "Plaintiff's law firm is using many of these lawsuits as a means of conducting fishing expeditions." Just as Judge Duggan found it appropriate to hold the plaintiff's counsel in *Jaafar* liable for the defendant's costs and reasonable attorney fees incurred "in defending this action," *Jaafar,* 2009 WL 3602091, at *3, this Court likewise held in its February 10 opinion that "Plaintiff's counsel must pay the attorney fees and costs reasonably incurred by Defendants in defending this action," (2/10/2010 Op. at 14), a ruling that was not limited to the conduct of Plaintiff's counsel in responding to Defendants' dispositive motions. Because the Court has determined that an award of sanctions should encompass the entirety of Defendants' reasonable attorney fees and costs incurred in this action, and because the Court views the efforts, time spent, and billing rates of GMAC Mortgage's

counsel as reasonable, the Court finds that the full amounts of the fees and costs disclosed in GMAC Mortgage's submission should be awarded.

Finally, apart from determining the appropriate amount of sanctions, the Court also must resolve a rather unseemly dispute that has arisen between attorney Kassem Dakhlallah, who was Plaintiff's principal representative during this suit, and the Landis & Day law firm, where Mr. Dakhlallah was employed throughout the bulk of this litigation.[2] In its submissions in opposition to Defendants' statements of their attorney fees and costs, the Landis & Day firm contends that any award of sanctions should be imposed solely upon Mr. Dakhlallah, and not the firm, where Mr. Dakhlallah was "the attorney responsible for initially filing this case in Wayne County Circuit Court and for litigating this matter in its entirety after removal to U.S. District Court," and where "neither the firm nor current Plaintiff's counsel were involved in filing or litigating this case." (Plaintiff's Counsel's Response at ¶¶ 6, 11.) For his part, Mr. Dakhlallah asserts that the Landis & Day firm and Plaintiff's current counsel, Mr. Ewald, were in fact involved in

---

[2]Specifically, Mr. Dakhlallah left the firm in early October of 2009, after Defendants' motions to dismiss had been fully briefed by the parties and the Court had taken them under advisement. After Mr. Dakhlallah left the firm (and while Defendants' motions remained under advisement), another attorney at the firm, Edward L. Ewald, Jr., appeared on Plaintiff's behalf and filed a witness list and a motion to withdraw as Plaintiff's counsel. In this latter motion, Mr. Ewald stated that he and defense counsel had "engaged in thorough, good-faith attempts to reach an agreeable settlement in this matter," and that "[c]ounsel has represented Plaintiff in this matter from the time of filing the complaint and throughout efforts to reach a settlement agreement," but that there had since been "a complete breakdown in communication between Counsel and Client." (1/21/2010 Motion to Withdraw at ¶¶ 5-7.) In its February 10, 2010 opinion, the Court declined to address this motion, finding that it was moot "[i]n light of the Court's determination that this case should be dismissed." (2/10/2010 Op. at 14 n.8.)

4

litigating this case, both before and after Mr. Dakhlallah left the firm. (*See* Dakhlallah Response at ¶¶ 7-13.)[3]

In one respect, the law firm clearly has the better of the argument. In its February 10, 2010 opinion, the Court cited 28 U.S.C. § 1927 as the basis for an award of sanctions, noting that neither Defendant had complied with the "safe harbor" provision of Fed. R. Civ. P. 11(c)(2) as a necessary predicate to an award of sanctions under that Rule. Yet, the Sixth Circuit recently held that § 1927, with its reference to "[a]ny attorney or other person," does not "authorize the imposition of sanctions on law firms." *BDT Products, Inc. v. Lexmark International, Inc.,* 602 F.3d 742, 751 (6th Cir. 2010). Consequently, any award in this case that rests upon § 1927, as opposed to some other legal authority for sanctioning counsel, cannot be imposed upon the Landis & Day firm. Moreover, to the extent that Mr. Dakhlallah suggests that the Court should hold Plaintiff's current counsel, Mr. Ewald, responsible for submissions filed on Plaintiff's behalf before Mr. Ewald formally appeared in this case in mid-December of 2009, the Court declines this invitation to "pierce the veil" of pleadings and papers signed solely by Mr. Dakhlallah to inquire whether other individuals at the Landis & Day firm might also have been involved in the preparation or filing of these submissions.

---

[3]Mr. Dakhlallah also contends that the law firm's responses to Defendants' statements of their fees and costs should be rejected as untimely attempts to alter or amend the Court's February 10, 2010 judgment of dismissal beyond the 28-day period for seeking such relief. *See* Fed. R. Civ. P. 59(e). Yet, nothing in the law firm's submissions seeks to alter the judgment of dismissal in any way. Rather, the firm has merely addressed two matters that remain pending before the Court: namely, the amount of sanctions to be imposed, and how this award should be apportioned among Mr. Dakhlallah and his former firm.

Nonetheless, as the Seventh Circuit observed under somewhat analogous circumstances, this Court believes it would be "a troubling outcome," *Claiborne v. Wisdom,* 414 F.3d 715, 724 (7th Cir. 2005), to impose sanctions upon Mr. Dakhlallah alone, and not the Landis & Day firm. In *Claiborne,* 414 F.3d at 722-24, the district court imposed § 1927 sanctions upon both an attorney, Elaine Boyd, and her law firm, but the Seventh Circuit held that the firm was not subject to sanctions under § 1927.[4] However, the court then emphasized:

> This does not mean that courts are powerless to impose sanctions on law firms that bear some responsibility for an individual attorney's conduct. First, it still may be possible as a matter of [state] common law to hold the firm vicariously liable for the injuries inflicted by the individual attorney's conduct . . . . The only question we have been considering is the firm's direct liability for the sanctions; we have no comment here on any possible vicarious liability if Boyd fails to satisfy the judgment. Second, Rule 11 now expressly permits sanctions against "the attorneys, law firms, or parties" that have violated the rule. On top of all that, the court retains inherent power to impose sanctions when the situation is grave enough to call for them and the misconduct has somehow slipped between the cracks of the statutes and rules covering the usual situations. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

*Claiborne,* 414 F.3d at 723-24 (citation omitted). Finally, the court observed that the case before it was a strong candidate for the imposition of sanctions upon attorney Boyd and her law firm alike, where "[i]t appear[ed] from the record that there was a close connection between Boyd's actions and those of her firm" and "the firm was on notice of the fact that her litigation practice was questionable." 414 F.3d at 724.

---

[4]The Sixth Circuit relied largely on the Seventh Circuit's *Claiborne* decision in reaching the same conclusion in *BDT Products,* 602 F.3d at 750-51.

Likewise, in this case, the Court finds that the circumstances warrant an award of sanctions against both Mr. Dakhlallah and the law firm that employed him at all relevant times during this litigation. Mr. Dakhlallah remained at the Landis & Day firm throughout the entire time the parties litigated the substance of their claims and defenses, including the filing of the complaint in state court, the removal of the case to this Court, and the briefing on Defendants' motions to dismiss. Even after Mr. Dakhlallah left the firm in October of 2009, neither he nor the firm sought leave to withdraw from the case at that time, nor was another attorney at the firm substituted in his place.[5] Given that Mr. Dakhlallah is a relatively inexperienced attorney, having been a member of the Michigan bar only since late 2007, it strains credulity that his work in this case would not have been monitored and supervised by a more senior attorney at the Landis & Day firm, particularly after he and his firm had been expressly warned in a number of decisions issued by courts in this District that they were subject to sanctions for bringing suits which, like the present action, lacked a proper factual or legal basis. *See, e.g., Jaafar v. Homefield Financial, Inc.,* No. 09-12832, 2009 WL 3602091, at *2-*3 (E.D. Mich. Oct. 27, 2009*)*; *Beydoun v. Countrywide Home Loans, Inc.,* No. 09-10445, 2009 WL 1803198, at *7 (E.D. Mich. June 23, 2009). Since the earlier of these decisions, *Beydoun,* preceded the removal of the present suit to this Court, the Landis & Day firm surely has been on

---

[5]Instead, and as noted earlier, the firm, through attorney Edward Ewald, Jr., first sought to withdraw from the case just a few days before the Court issued its February 10, 2010 opinion granting Defendants' motions to dismiss and determining that sanctions were warranted.

7

notice throughout this litigation that one of its attorneys was engaging in sanctionable conduct, and this "should have been a general alert to the responsible partners in the firm to ensure that [Mr. Dakhlallah's] conduct met all relevant professional standards." *Claiborne,* 414 F.3d at 724.[6]

Accordingly, while § 1927 permits the imposition of sanctions only upon Mr. Dakhlallah, the Court finds it necessary and appropriate to exercise its inherent power to impose a portion of this burden upon the Landis & Day firm. In order to invoke this "inherent power to sanction for conduct which abuses the judicial process," the Court must "find [1] that the claims advanced were meritless, [2] that [the firm] knew or should have known this, and [3] that the motive for filing the suit was for an improper purpose such as harassment." *BDT Products,* 602 F.3d at 751-52 (internal quotation marks and citations omitted). The Court has already concluded in its February 10, 2010 opinion that the first element of this test is satisfied here. (*See* 2/10/2010 Op. at 13-14.) Next, the Court explained earlier in the present opinion that, in its view, the Landis & Day firm

---

[6]Indeed, while the firm claims in its more recent submissions that "neither the firm nor current Plaintiff's counsel [Mr. Ewald] were involved in filing or litigating this case," (Plaintiff's Counsel's 3/9/2010 Response at ¶ 11), the firm's earlier motion to withdraw states that "Landis & Day, PLC initiated this matter in the Wayne County Circuit Court on behalf of Plaintiff by filing a Complaint," and that "[c]ounsel" — presumably a reference to Mr. Ewald, who signed and filed this motion — "has represented Plaintiff in this matter from the time of filing the complaint and throughout efforts to reach a settlement agreement," (1/21/2010 Motion to Withdraw at ¶¶ 1, 6). The Court is not sure which is worse — the notion that the firm might have utterly failed to monitor or supervise Mr. Dakhlallah's work, even as storm clouds were building on the horizon, or the notion that the firm was aware of Mr. Dakhlallah's conduct and made a (perhaps calculated) decision to look the other way. Either way, the firm's present effort to distance itself from the work of one of its former lawyers is unseemly at best.

surely knew or should have known that the claims in this case lacked merit, where the claims here were essentially the same as those brought in a plethora of other suits filed by Mr. Dakhlallah in this District within a fairly short time, and where he and his firm were on notice, even before this case was removed to this Court, that these claims had been deemed sanctionable as lacking a factual or legal basis.

This leaves only the third prong of this standard — namely, whether the firm "acted in bad faith or with improper purpose" in bringing this suit or continuing to pursue it, or whether the firm's "conduct was tantamount to bad faith." *BDT Products,* 602 F.3d at 756. The Sixth Circuit has emphasized that this showing cannot rest upon the "mere fact that an action is without merit," and that a "court must find *something more* than that a party knowingly pursued a meritless claim or action at any stage of the proceedings." *BDT Products,* 602 F.3d at 753 (internal quotation marks, citations, and footnote omitted). The requisite "something more" is readily apparent here, where the present suit hardly stands alone as an isolated instance of Mr. Dakhlallah and his firm bringing a suit with no factual or legal basis. To the contrary, as observed by Judge Duggan in *Jaafar,* 2009 WL 3602091, at *3 — and as quoted with approval in this Court's February 10, 2010 opinion — "more than 90 cases filed by [the Landis & Day] law firm have been removed to this district from state courts" within a few-month period, and "each of those 90+ cases involve[s] nearly identical issues." Against this backdrop, Judge Duggan concluded that the law firm had brought at least the bulk of these suits for an improper purpose, *Jaafar,* 2009 WL 3602091, at *3, and this Court readily agrees.

9

More specifically, Judge Duggan opined that Mr. Dakhlallah and his firm were "using many of these lawsuits as a means of conducting fishing expeditions." *Jaafar,* 2009 WL 3602091, at *3. This Court would only add that, from surveying the dockets in this glut of cases, it would appear that Mr. Dakhlallah and his firm were not especially interested in securing relief on the merits of the claims asserted on behalf of their clients, but rather were commencing litigation solely for the purpose of obtaining an additional bargaining chip to be used in an attempt to negotiate a more favorable resolution to difficulties in their clients' home loan transactions. Indeed, so far as the Court is aware, Mr. Dakhlallah and his firm failed to secure any substantive rulings in their clients' favor in any of these cases. To the contrary, they all too often chose the course of action they pursued in the present case — namely, filing briefs in opposition to dispositive motions that rehashed arguments that had already been rejected in earlier suits under essentially the same records and circumstances. The Court is confident that this pattern of asserting meritless claims and advancing baseless and previously rejected arguments establishes that both Mr. Dakhlallah and the Landis & Day firm "acted in bad faith or with improper purpose," *BDT Products,* 602 F.3d at 756, in bringing this suit and continuing to pursue it in the face of Defendants' identification of clear and irrefutable grounds for its dismissal. Accordingly, to the extent that 28 U.S.C. § 1927 does not permit the imposition of sanctions upon both Mr. Dakhlallah and the Landis & Day firm, the Court will invoke its inherent power to do so.

It remains only to determine how the award of sanctions should be apportioned

between Mr. Dakhlallah and his firm.  As stated earlier, the Court has determined that Defendant Provident Funding Group should be awarded $4,329.04 in attorney fees and costs, and that Defendant GMAC Mortgage should be awarded $3,780.80 in attorney fees and costs, for a total amount of 8,109.84 in sanctions.  In the Court's view, Mr. Dakhlallah is somewhat more culpable for the sanctionable conduct that occurred in this case, as he has been the attorney of record throughout all relevant portions of this litigation.  Nonetheless, the Court has further explained that, in its view, the Landis & Day firm shares a significant portion of the blame for this conduct by, at a minium, failing to adequately supervise Mr. Dakhlallah's work, and by failing to ensure that his conduct and filings in this case have complied with the relevant Federal Rules and professional standards.  Consequently, the Court finds that Mr. Dakhlallah must pay the $4,329.04 in sanctions awarded to Defendant Provident Funding Group, and that the Landis & Day firm must pay the $3,780.80 in sanctions awarded to Defendant GMAC Mortgage.

      For these reasons,

NOW, THEREFORE, IT IS HEREBY ORDERED, pursuant to 28 U.S.C. § 1927 and the Court's inherent power, that attorney Kassem Dakhlallah shall pay a sanction in the amount of **$4,329.04** to Defendant Provident Funding Group.  IT IS FURTHER ORDERED, pursuant to the Court's inherent power, that the Landis & Day law firm shall pay a sanction in the amount of **$3,780.80** to Defendant GMAC Mortgage.

SO ORDERED.

s/Gerald E. Rosen
Chief Judge, United States District Court

Dated:  August 17, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 17, 2010, by electronic and/or ordinary mail.

s/Ruth A. Gunther
Case Manager